# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Action No. 09-cv-01282-REB

MATTHEW MESTAS,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1], filed June 2, 2009, seeking review of the Commissioner's decision partially denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that he is disabled as a result of degenerative disc disease of the cervical and lumbar spine, pain of in the right shoulder associated with a traumatic injury and subsequent surgeries, carpal tunnel syndrom, and anxiety and depression. After his applications for disability insurance and supplemental security benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on February 22, 2008. At the time of the hearing, plaintiff was 37 years old. He has a

ninth grade education and past relevant work experience as a roofer, concrete worker, and construction material handler.  He has not engaged in substantial gainful activity August 24, 2004.

The ALJ issued a partially favorable decision, concluding that plaintiff was not disabled prior to July 1, 2006, and therefore not entitled to disability insurance or supplemental security income benefits between his alleged date of onset and that date.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge found that the severity of those impairments did not meet or equal any impairment listed in the social security regulations prior to July 1, 2006.  The ALJ found that prior to that date, plaintiff had the residual functional capacity to perform light work with no lifting over 20 pounds and no lifting or reaching overhead.  Although this finding precluded plaintiff's past relevant work, the ALJ concluded that there were other jobs existing in significant numbers in the national and local economies that he could perform within his residual functional capacity.  He therefore found plaintiff not disabled prior to July 1, 2006, at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the

2

impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th

Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Although plaintiff advances three separate claims of error in this lawsuit, all are premised on the contention that the ALJ erred in determining plaintiff's residual functional capacity prior to July 1, 2006, the date as of which the ALJ concluded that he was disabled. Finding no reversible error in that determination, I affirm.

Plaintiff first claims the ALJ erred by failing to properly consider and address the opinions of his treating physicians, Dr. Jag Waila, Dr. Katharine Leppard, and Dr. Wallace Larson, regarding his limitations prior to July 1, 2006. The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record" and cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. 20 C.F.R. § 404.1527(d)(2); **see also Watkins v. Barnhart**, 350 F.3d 1297, 1301 (10th Cir. 2003).

All three treating sources rendered opinions regarding plaintiff's work-related abilities prior to the date the ALJ found he was disabled. Significantly, none suggested that plaintiff was unable to work for a period of twelve consecutive months or more during that period.[1] *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a) & 416.950;

---

[1] On August 25, 2004, plaintiff fell backward off a roof onto a landing one story below, breaking his right arm in three places (Tr. 523), which Dr. Larson surgically repaired two days later (Tr. 452). Dr. Walia released plaintiff to work on a modified basis, restricted to sitting only with no lifting. (Tr. 345.) On October 5, plaintiff was released to sedentary work, six to eight hours a day, on September 21. (Tr. 341.) His restrictions were upgraded to light work, with no lifting over five pounds and no lifting with the right arm over two pounds, on November 30 (Tr. 327), and remained essentially the same until March 24, 2005 (Tr. 293-308), when plaintiff underwent a second surgery (Tr. 146). A third, arthroscopic surgery of the right shoulder was performed on July 7, 2005. (Tr. 132). He finally was released to light work with no lifting or reaching overhead with the right arm and no lifting over 20 pounds on September 27. (Tr. 293.)

5

***Kelley,*** 62 F.3d at 338. The limitations imposed by each source within this period are largely consistent with one another. On September 27, Dr. Waila released plaintiff to light work, six to eight hours a day, with no lifting or reaching overhead with the right arm and no lifting over 20 pounds. (Tr. 293.) Dr. Larson imposed work restrictions on December 15, 2005, of no overhead lifting, no strong repetitive gripping, and no lifting more than 10 pounds with the right hand. (Tr. 585.) On November 2, 2005, Dr. Katharine Leppard concluded that plaintiff had reached maximum medical improvement with a whole person impairment score of 48 percent and recommended permanent work restrictions of no lifting over 20 pounds, no overhead work with the right arm, and no work on rooftops. (Tr. 493.)

The ALJ specifically considered each of these opinions (Tr. 18-19),[2] and incorporated the restrictions imposed therein as part of his residual functional capacity assessment, finding plaintiff capable of light work requiring lifting no more than 20 pounds and no lifting or reaching overhead prior to July 1, 2006 (Tr. 21).[3] Plaintiff fails to demonstrate how any of this evidence suggests a residual functional capacity different from or less than that found by the ALJ for this period. ***See Williams v. Chater***, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that

---

[2] Plaintiff's assertion that the ALJ failed to address Dr. Waila's opinions at all is specifically refuted by the record. (***See*** Tr. 19 (discussing "[w]ork restrictions [imposed] on September 27, 2005"); ***cf.*** Tr. 29 (Dr. Waila's report imposing work-related restrictions as of that date).)

[3] Plaintiff's allegation that the ALJ failed to resolve a conflict between Dr. Larson's 10-pound restriction and Dr. Leppard's 20-pound restriction does not bear scrutiny. Dr. Larson's restriction was limited to the affected right upper extremity, while Dr. Leppard's was not. Moreover, Dr. Waila's September 27 opinion buttresses the 20-pound limitation, and even the functional assessment on which the ALJ relied to find plaintiff disabled as of July 1, 2006, notes that the right upper extremity could be used as a "helper hand" to assist the left arm in lifting, thereby doubling plaintiff's lifting capacity when both arms were used. (***See*** Tr. 90, 92.)

does not affect a party's substantive rights is not a basis for reversal."); **Bernal v. Bowen**, 851 F.2d 297, 303 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial evidence). Nor is there reversible error in the ALJ's alleged failure to consider the factors set forth in 20 C.F.R. §§ 1527(d)(2) and 416.927(d)(2). The ALJ is required to consider these factors only to the extent he determines to afford less than controlling weight to the treating source opinions. **See Newton v. Apfel**, 209 F.3d 448, 455-58 (5th Cir. 2000) (citing **Goatcher v. United States Department of Health & Human Services**, 52 F.3d 288, 290 (10th Cir. 1995)). The regulation is inapplicable where, as here, the ALJ adopts the limitations suggested by plaintiff's treating sources. Even where these factors are relevant, the regulations requires only that the ALJ "apply" them; there is no requirement that the factors be recited as a litany. **See Zatz v. Astrue**, 2009 WL 3198743 at *4 (7th Cir. Oct. 5, 2009) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence.").

Plaintiff's remaining arguments are premised on similar contentions, and thus fare no better. With regard to plaintiff's pain, headaches, and borderline intellectual functioning, which he claims the ALJ failed to consider in combination with his severe impairments, there is nothing to suggests that these complaints were not fully considered in the contemporaneous functional assessments put forth by the treating sources.[4] Moreover, the ALJ specifically considered and incorporated the effects of

---

[4] For example, although plaintiff suffered from headaches during the relevant time frame, therapy provided relief. (**See** Tr. 681.) **See Pacheco v. Sullivan**, 931 F.2d 695, 698 (10th Cir. 1991) (impairment

plaintiff's borderline intellectual functioning by restricting him to unskilled work. (Tr. 17.) Again, to the extent the ALJ erred in failing to more specifically state that he was considering the combined effect of all impairments, both severe and non-severe, plaintiff has failed to demonstrate how such purported oversight was more than harmless error. *Bernal*, 851 F.2d at 303.

Finally, given that the limitations and residual functional capacity found by the ALJ are supported by substantial evidence of record, there was no error in failing to incorporate greater limitations into the hypothetical posited to the vocational expert. *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (hypothetical need only include such limitations as are supported by medical evidence). The ALJ clearly asked the vocational expert to account for plaintiff's borderline intellectual functioning, and plaintiff fails to elaborate as to how the ALJ's elaboration to include no "significant reading and writing and use of math" fails to match this diagnosis, much less how it constitutes prejudicial error. (Tr. 731-732.)[5] The additional limitations to which plaintiff points were either self-identified or noted principally near or after the date on which the ALJ found him to be disabled. (*See* Plf. Br. at 29.) They provide no basis to conclude that

---

that can be controlled with treatment is not disabling). Plaintiff's other pain complaints also appeared to wax and wane, exceeding the clinical findings, although clearly not entirely controlled and becoming more intractable over time. (*See* Tr. 127, 357, 499, 588-590.)

Moreover, on October 6, 2005, Dr. Larson specifically noted, despite plaintiff's complaints of chronic pain, that "[t]here is no evidence of reflex sympathetic dystrophy." (Tr. 588.) Dr. Leppard also clearly was aware of plaintiff's chronic pain issues and clearly incorporated ongoing treatment for them in her functional assessment. (Tr. 493.)

[5] In a single, footnoted sentence, plaintiff posits that the reading and math requirements of the jobs identified by the vocational expert, as set forth in the *Dictionary of Occupational Titles*, "appear" to be beyond his identified limitations in these areas. (Plf. Br. at 29 n.10.) I do not consider such inadequately briefed arguments. *See Adler v. Wal-Mart Stores*, 144 F.3d 664, 679 (10th Cir. 1998).

8

reversible error occurred.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated September 7, 2010, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge